Maxine Y. WHITE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 4:90CV00241.

United States District Court,
M.D. North Carolina,
Salisbury Division.

Jan. 4, 1991.

Thomas M. King, Salisbury, N.C., for plaintiff.

Jon D. Pifer, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court on plaintiff's motion to review the jeopardy assessment made against her and the United States' motion for a summary determination of the jeopardy assessment. After careful review of the facts and supporting documents of this case, the court finds that the jeopardy assessment is reasonable and that the amount assessed is appropriate under the circumstances.

### Factual Background

Plaintiff Maxine Y. White was employed as a bookkeeper for Dr. William Smith Kirk in Salisbury. On December 12, 1989, plaintiff was indicted by the Rowan County Grand Jury on six counts of embezzlement of over $250,000 from Dr. Kirk. The alleged illegal activity covered the period April 2, 1982 through April 20, 1988. Plaintiff was convicted, sentenced to twenty years' imprisonment, and ordered to pay restitution in the amount of $291,782.75.

On February 27, 1990, a jeopardy assessment was made against plaintiff for federal income tax for the years 1983–1987. The Internal Revenue Service calculated that plaintiff owed $156,469 in taxes and penalties. On March 2, 1990, plaintiff was mailed notice of the jeopardy assessment in accordance with 26 U.S.C.A. § 7429(a)(1) (West 1989) and was afforded the opportunity for administrative review by the Appeals Office of the Internal Revenue Service. The Appeals Office notified plaintiff on July 10, 1990 that the jeopardy assessment was reasonable and the amount appropriate.

The defendant alleges that "jeopardy assessments of additional tax, interest and penalties were based entirely on unreported alleged embezzlement income for the respective tax years in question." Defendant's Response To Complaint For Review Of Jeopardy Assessment p. 4. "The taxes and penalties assessed in the jeopardy assessment were calculated by including in the petitioner's gross income the amounts which were alleged to be embezzled by her in five of the indictments." Defendant's Response To Complaint For Review Of Jeopardy Assessment pp. 4–5.

The only assets of the plaintiff known to the Internal Revenue Service include her share in a divorce settlement, which includes approximately $100,000 in stock and $50,000 in cash; her rights in a retirement account with Dr. Kirk; and a 1987 Volvo automobile, currently in the possession of her daughter. The defendant brings this action in part because these assets could be easily liquidated or transferred. The defendant also feels as though the embezzled funds have been dissipated or transferred.

### Discussion

■ The Internal Revenue Service (IRS), pursuant to 26 U.S.C.A. §§ 6861–6862 (West 1989), may expedite the collection of taxes if it is determined that such collection will be jeopardized by delay. The method by which this is accomplished is called a jeopardy assessment.

■ The court's review of the jeopardy assessment is pursuant to 26 U.S.C.A. § 7429(b)(2) (West 1989) and is limited to two questions: (1) whether the assessment was reasonable under the circumstances and (2) whether the amount assessed was appropriate. The burdens of proof rest with the Government on the issue of reasonableness of the assessment and with taxpayer on the issue of the appropriateness of the amount. 26 U.S.C.A. § 7429(g)(1), (2) (West 1989); *see Larosa v. United States*, 841 F.2d 544, 545 (4th Cir. 1988), *Young v. United States*, 671 F.Supp. 1340, 1343 (S.D.Fla.1987).

*Reasonableness of the assessment*

The court, in *Loretto v. United States,* 440 F.Supp. 1168, 1172 (E.D.Pa.1977), summarized the analysis which courts must undertake when addressing the issue of reasonableness.

Although the reasonableness standard is somewhat indefinite, and the legislative history unilluminating, a comparison of that standard with two of the standards articulated in the Administrative Procedure Act sheds some light on the intended scope of review under § 7429(b)(2)(A). The Administrative Procedure Act directs the reviewing court to set aside agency actions that are, *inter alia,* either "arbitrary, capricious, ... or otherwise not in accordance with law," or "unsupported by substantial evidence in a case [involving formal rulemaking]." 5 U.S.C. § 706(2)(A), (E) (1970). (Footnote omitted.)

■ The court is faced with six factors which the Government suggests meet the burden of proof. Four of these factors relate specifically to illegal activity on the part of plaintiff. They include embezzlement convictions, substantial unreported embezzlement income, a probation violation, and the inability to locate the embezzled proceeds. Such involvement "is an important consideration in the determination of whether the assessment was reasonable." *Young,* 671 F.Supp. at 1343. The court is of the opinion that these factors, taken individually and as a whole, justify the imposition of a jeopardy assessment. The court finds support for this conclusion in the fact that mere involvement in illegal activity "is sufficient to warrant a jeopardy assessment." *Id.*

■ The remaining two factors are just as determinative. The Government is of the opinion that the plaintiff's remaining assets could be easily transferred or dissipated, making it virtually impossible for the Government to receive tax money. This conclusion has merit because plaintiff has placed all of the embezzled funds beyond governmental reach. The court agrees with the Government that the plaintiff's remaining assets which include a re-

tirement account and an automobile (the divorce settlement has been frozen by the state court and is not at issue) can be easily transferred or dissipated.

■ The Government is also concerned about the possibility of the plaintiff's becoming insolvent. There are several pending matters which cause the court to believe this is true. First, the state court ordered the plaintiff to pay restitution to Dr. Kirk. Second, Dr. Kirk instituted a civil action to collect the funds embezzled from him. Third, the plaintiff has incurred substantial legal expenses for her defense in the criminal action and the current civil action. Viewing these factors with her available assets, the court is of the opinion that insolvency is not only possible but indeed probable.

The court's review is justified by the expressed language of Congress which established standards for determining when a jeopardy assessment is appropriate. The determination depends on whether:

1. The taxpayer is or appears to be designing quickly to depart from the United States to conceal himself;

2. The taxpayer is or appears to be designing quickly to place his property beyond the search of the Government either by removing it from the United States, or by concealing it, or by transferring it to other persons, or by dissipating it; or

3. The taxpayer's financial solvency appears to be imperiled.

*Young,* 671 F.Supp. at 1343; *see Joint Committee on Taxation, General Explanation of the Tax Reform Act of 1976,* H.R.Rep. No. 10612, 94th Cong., 2d Sess. 361 n. 7 (1976).

*Appropriateness of the Amount Assessed*

■ The actual amount assessed by the Government is presumed to be reasonable and appropriate. *Felkel v. United States,* 570 F.Supp. 833, 841 (D.S.C.1983). It is the burden of the plaintiff to show that the assessment is inappropriate. The plaintiff has not submitted evidence to establish that the assessment is inappropriate. Therefore, court has no choice but to

hold that the amount assessed is indeed appropriate.

### Conclusion

The court finds as a matter of law that the jeopardy assessment against the plaintiff was both reasonable and appropriate under the circumstances. A judgment is entered contemporaneously with this Memorandum Opinion.